**SQUIRE, Plaintiff-Appellant, v. GUARDIAN TRUST COMPANY, et al., Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20317—Decided January 18, 1947.

Hugh S. Jenkins, Columbus, Attorney General, Davis & Young, Cleveland, and Fred J. Young, Cleveland, Krueger, Gorman and Davis, Cleveland, and Harold H. Gorman, Cleveland, for plaintiff-appellant.

Thompson, Hine & Flory, Cleveland, for R. H. Bishop, Jr., O. W. Prescott, A. L. Stone and G. C. Wade, defendants-appellees.

Jones, Day, Cockley & Reavis, Cleveland, for William J. Mather, defendant-appellee.

Squire, Sanders & Dempsey, Cleveland, for appellees Dean, Gill, McIntosh, Patterson, Petrequin, Rossiter and Whelan.

Baker, Hostetler & Patterson, Cleveland, and Dorn & Merry, for defendant-appellee Edward S. Rogers.

Garfield, Baldwin, Jamison, Hope & Ulrich, Cleveland, for defendant-appellee Tillotson.

Grossman, Carter, Hamilton & Rosenman, for defendant-appellee, Marc J. Grossman, Executor of Louis J. Grossman, deceased.

Clinton DeWitt, Cleveland, for defendant-appellee Brooks.

Roscoe M. Ewing, Cleveland, for defendants-appellees Robinson and Edgar D. Rogers.

Frank H. Pelton, Cleveland, for defendants-appellees House & Menks.

Andrews, Hadden & Putnam, Cleveland, for defendant-appellee Hanna.

Boyd, Brooks & Wickham, Cleveland, for defendant-appellee Daley.

McKeehan, Merrick, Arter & Stewart, Cleveland, for defendant-appellee Eide.

W. Edmund Peter, for defendant-appellee Bowman.

Henry H. Pleasant, Cleveland, for defendant-appellee Kline.

HILDEBRANT, PJ, MATTHEWS & ROSS, JJ, of the First Appellate District, sitting by designation in the Eighth Appellate District.

## OPINION

By ROSS, J.

This is an appeal on questions of law from a judgment of the Common Pleas Court of Cuyahoga County, in which demurrers to certain causes of action in the Fourth Amended Petition were sustained, and those causes of action dismissed, the plaintiff not desiring to plead further thereon.

The fourth amended petition contains 97 causes of action. In the brief of the plaintiff-appellant, it is stated:

"I. The Court of Common Pleas sustained the demurrers to Causes of Action Nos. 1 to 19 inclusive, 21 to 32 inclusive, 35, 37 to 49 inclusive, 51, and part of Cause of Action No. 50 (47 in all) on the ground that the causes were barred by the statute of limitations. Since the Superintendent did not desire to amend, the Court of Common Pleas rendered judgment in favor of defendants on these Causes of Action. The first issue before this Court, therefore, pertains to the statute of limitations.

"II. The Court of Common Pleas also sustained the demurrers to Causes of Action Nos. 20, 33, 34, and 59 to 97, inclusive (42 in all) on the ground that the Superintendent had not alleged facts sufficient to state a cause of action. The plaintiff did not desire to amend Causes of Action Nos. 20, 33, 34 and 97, and the Court of Common Pleas rendered judgment in favor of defendants on these four Causes of Action. The second issue, therefore, concerns the sufficiency of the allegations set forth in Causes of Action Nos. 20, 33, 34 and 97.

"III. The Court of Common Pleas in its Opinion stated that Causes of Action Nos. 59 to 96 inclusive (38 in all), relating to the plans and policies for the administration of trust estates, were prematurely brought because no damage was alleged to have occurred. To remedy this objection, plaintiff made application for leave to file a Supplemental Petition setting forth facts pertaining to damage which occurred after the commencement of the action. This application was overruled, and, after the Superintendent had stated that he did not wish to amend any of these thirty-eight Causes of Action, judgment was reversed in favor of defendants on Causes of Action Nos. 59 to 96 inclusive. This refusal to permit the filing of the Supplemental Petition constitutes the basis of the third issue.

"IV. The Court of Common Pleas, as we have said, sustained demurrers to part only of Cause of Action No. 50, and overruled them as to the balance of that Cause of Action. The right to sustain demurrers to a part only of a Cause of Action raises the fourth issue.

"V. A fifth and minor issue arises because the Court of Common Pleas granted a demurrer of defendant, Mather, on the ground that all of the Causes of Action did not affect him."

It is probably unnecessary to state that the task presented to the trial court and now to this court assumes herculean proportions. The points raised in the briefs and arguments are legion. Any attempt to tender in this opinion any detailed discussion of the several contentions of the parties, or even to mention all of them, would be of little benefit to anyone and unduly extend this opinion beyond the scope permitted by considerations of propriety, or the necessity for a fair statement of the premises upon which the conclusions reached herein are based.

Justification also is found in the able and extended consideration given the problems presented by the trial court.

For these reasons, such conclusions will be stated in a more or less categorical manner. In the main, the outline

adopted by the appellant will be followed in passing upon the assignments of error advanced by him.

## I.

Directing attention to the causes of action included in division No. I, as set out supra, the trial court sustained demurrers to the causes of action therein included, upon the ground that it appears from the face of the petition they are barred by the statute of limitations.

The appellant places his claim of error in such ruling upon a number of premises. These premises in turn involve a number of questions which will be first considered.

Is more than one statute of limitations involved?

Without at this point passing upon the validity of the several causes of action, it may be considered that the appellant in his allegations has relied for relief both upon remedies provided by the common law and the statutes of Ohio. In the consideration of his pleading certain general rules applicable to demurrers are considered.

(1) The appellant is not bound by any theory for relief he may assert. He is bound only by the facts he alleges in his petition and if those facts state any action in law or equity, the Court is compelled to extend such relief, regardless even of his prayer for same. **Schaefer v First Natl. Bank, 134 Oh St 511, 520; Triff, Admx., v Foundry Co., 135 Oh St 191, 205; State, ex rel., v Beamer, 109 Oh St 133, 150.**

When in doubt, a plaintiff may state his cause of action in the alternative. **Sicard v Distributing Co., 133 Oh St 291, 296.**

So even if the plaintiff mistakenly disclaims charges of fraud or negligence, if the facts alleged state a cause of action in fraud, negligence or equity, or a cause of action created by statute, the court must disregard his "theory" and even his prayer, and upon demurrer give his petition any proper construction sustained by the facts.

(2) In construing such petition upon demurrer the plaintiff is entitled to consideration of not only the proper and well-pleaded factual allegations, but also to the fair, reasonable, and favorable intendments and inferences arising therefrom, except when jurisdictional factual allegations are involved. **Life Ins. Co. v Veser, 128 Oh St 200; Parletto v Indus. Comm., 140 Oh St 12; Humphries v Steel Corp., 132 Oh St 263; Elec. Ry. Co. v Express Co., 105 Oh St 331.**

(3) The nature of the action, whether in law or equity, is determined by the character of the principal relief, justi-

fied by the facts alleged in the petition. **Nordin v Coulton, 142 Oh St 277; Borton v Earhart, et al., 144 Oh St 334.**

(4) It is an equitable action if it is necessary to determine first whether the plaintiff is entitled to equitable relief before legal redress can be granted. (Id.)

These general principles, it may appear, will be more applicable when considering the causes of action in the light of a demurrer predicated upon the claim that no cause of action is stated. However, they are at this point pertinent, in view of the several claims of plaintiff as to the nature of these causes of action, and the several theories advanced by plaintiff which he asserts are sustained by his several allegations of fact.

Bearing these general principles of pleading in mind, a solution of the questions presented is undertaken.

The facts alleged in the causes of action justify only a claim for money. This is the relief sought and the only principal relief warranted by the allegations of the petition.

(5) It is not necessary to resort to equity to obtain payment of the damages caused by the violation of rights alleged. Accounting is ancillary to the main relief.

(6) These causes of action are not representative causes of action by either stockholders, depositors, or other creditors. They are causes of action specifically provided for by statute.

This is an action by the Superintendent of Banks. He is the only plaintiff. That capacity is given him by the statutes of this state.

"The office of Superintendent of Banks is of statutory creation and the powers and duties of the incumbent thereof must likewise be statutory or they do not exist." **National City Bank v. Guardian Trust Co., 137 Oh St 279, 282; State, ex rel. v Cook, Supt. of Banks, 146 Oh St 348.** At page 376 of the latter case, it is stated:

"The duties of the Superintendent of Banks in the liquidation of a bank are similar to the duties of the Superintendent of Building and Loan Associations in liquidating such association.

In the case of **State, ex rel. Merion, Supt. of Bldg. & Loan Assns. v Unemployment Compensation Bd. of Review et al., 142 Oh St 628, 53 N. E. (2d) 818,** Judge Zimmerman said at page 630: 'The superintendent, in liquidating the Columbian Building & Loan Company, was not acting in a sovereign or

governmental capacity. His status as liquidator was similar to that of an ordinary receiver or trustee, and his acts were for the benefit, and in the interests, of creditors, depositors and shareholders of the company and other affected persons, and not for the benefit of the state of Ohio in any direct sense.'

In the case of State, ex rel. Fulton, Supt. of Banks, v Bremer, Admx., 130 Oh St 227, 198 N. E., 874, this court held:

'The state of Ohio, while a nominal party in an action brought by the Superintendent of Banks against the stockholders of a bank to enforce the super-added liability imposed by Section 3 of Article XIII of the Constitution of Ohio, has no proprietary or pecuniary interest in the result of the action, and in such action is not suing in its sovereign capacity.' "

See, also, State, ex rel. Fulton v Coburn, 133 Oh St 192.

The Superintendent of Banks in this action asserts the rights of the bank, shareholders, depositors, and other creditors existing at the time he assumed control.

Secs. 710-95 and 710-67, GC: State, ex rel. v Cook, Supt. of Banks, 146 Oh St 348, 376; State, ex rel. Fulton v Bremer, 130 Oh St 227; Warner v Bldg. & Investment Co., 128 Oh St 37, 43.

(7) If a cause of action of the bank, a shareholder, depositor, or other creditor is barred, then such cause of action is barred when now asserted by the Superintendent of Banks. State, ex rel. Fulton v Bremer, 130 Oh St 227, supra; State, ex rel Fulton v Coburn, et al., 133 Oh St 192, supra.

Sec. 710-95, paragraph (7) GC, provides:

"The Superintendent of Banks, upon taking possession of the business and property of any bank, shall have, exercise and discharge the following powers, authority and duties, without notice or approval of court, but subject to the provisions of this chapter, to-wit:

* * *

"7. To institute and maintain against the directors, officers or employes of such bank, or any of them, any suit or action which such bank, its shareholders or creditors might institute and maintain."

Sec. 710-67 GC, provides:

"Any director of a bank who shall knowingly violate, or who shall knowingly permit any of the officers, agents or em-

ployees of a bank to violate any of the provisions of this act (Sections 710-1 to 710-189 GC) shall be held liable in his personal and individual capacity for all damages which the bank, its stockholders, or any other person shall have sustained in consequence of such violation."

(8) No personal, individual action of any shareholder, depositor, or creditor is here sought to be alleged. The general right of these classes, which might upon refusal of the Superintendent of Banks to act, be asserted in representative actions, through the intervention of equity, may now by statute, be asserted through the Superintendent of Banks, and are so asserted under the provisions of the statute.

(9) The claim of the appellees—incidentally that there is a misjoinder either of parties plaintiff or causes of action is negatived by the joinder permitted by the statute. (Sec. 710-95 GC, par. 7.)

So it not being necessary to resort to equity to obtain relief, and the principal object of all the causes of action as developed by the facts alleged being to obtain a sum of money, and the relief of accounting being only ancillary, the causes of action stated are all actions at law.

Are these causes of action ex delicto, ex contractu or statutory?

First, in order to bring the limitation within the fifteen year statute applicable to contracts in writing, it is asserted by the plaintiff that, the oath taken by directors being reduced to writing, such statute applies. There is some authority sustaining the claim of liability based upon an implied promise (see, XXXIX Columbia Law Review, p. 851) but that a contractual status is created by a contract in writing merely because of the directors' oath as far as has been ascertained has no support. Neither the express written contract theory nor the implied promise theory present a logical appeal or are warranted by the nature of and circumstances attending the taking of such oath.

(11) On the other hand, the weight of authority places the liability of directors upon two general grounds:—Common Law liability for negligence or fraudulent misapplication of funds, and liability created by statute. **Inglis v Pontius, Supt. of Banks, 102 Oh St 140, 146;** XXXIX Columbia Law Review, p. 851, supra; 77 A. L. R. 543, et seq.; 9 C. J. S. p. 231, 234, 235, 259.

(12) In **State, ex rel. Lien v House, et al., 144 Oh St 238,** it is held in the second paragraph of the syllabus: "An action against trustees of an express trust for loss of funds arising

from a breach of trust involving tortious conduct, such as bad faith, negligence and double-dealing, is one at law, the cause of action accrues, in the absence of undiscovered fraud, when the trusteeship as to such trustees is terminated, and the action is barred in four years by virtue of the provisions of §11224 GC.

(13) Where facts alleged fall short of establishing an express trust and the defendants have failed to exercise skill and prudence in caring for and investing the bank's funds, a fortiori, such defendants are liable in tort for such dereliction, and §11224 GC, stating a four year limitation would apply to neglect of duty. There being no allegation of facts from which actual fraud could be inferred, the exception to the operation of such limitation, mentioned in the last paragraph of the section has no application.

(14) In those cases where acts of directors are alleged constituting violation of the statutes applicable to the operation of banks, the six year statute of limitations (§11222 GC) would apply.

So that as to all causes of action in which facts are alleged charging either a violation of such common law duties or violation of the banking act, or both, the four or six year statute would apply. See, **State, ex rel. Lien, v House, et al., 144 Oh St 238, at p. 245.**

(15) It is the general rule that the statute of limitations commences to run at the time the cause of action accrues. **25 O. Jur. 532.** The cause of action accrues, in the case of torts, when the wrongful act is committed, and in case of statutory actions, when the violation of the statute occurs. 1 Am. Jur., 451, 452; **Minster Loan & Svgs. Co. v Laufersweiler, et al., 67 Oh Ap 375, 379; 83 A. L. R. 1204; 9 C. J. S. p. 245, section 122.**

The plaintiff advances several theories under which he asserts, first, a delay in the creation of the cause of action, and, second, that even though the cause of action has been created the statute of limitations is tolled.

These various reasons advanced by plaintiff for delaying the operation of the statute of limitations will be considered approximately in the order advanced.

(16) As a first reason, plaintiff claims "the statute does not run while the cause of action is concealed."

There is some authority for this position outside of Ohio and the original case in Ohio (**Fee's Admr., v. Fee, 10 Ohio, 470**) holding otherwise may be subject to some criticism. However the Fee case has been followed and no sound reason now appears for changing a policy fixed in our jurisprudence. **Howk v Minnick, 19 Oh St 462, 466; Williams v Pomeroy Coal Co., 37 Oh St 583, 589; Minster Loan & Savings Co. v Laufers-**

weiler, 67 Oh Ap 375, 378, 379; State, ex rel. Lien v House et al., 144 Oh St 238, 244, 245; 25 O. Jur. p. 597.

In some states applicable statutes of limitations are by express provision therein tolled until the discovery of the wrong. See: Michelsen, et al. v. Penney, et al., 135 Fed. Rep. (2d) 409, (N. Y.); Smith v. Lyle, 59 S. D. 534. In our own state, the statute is tolled in case of fraud and certain tresspasses in like manner. (Sec. 11224 GC.)

If the legislature had deemed it expedient it could have so provided, either generally as to cases of concealed torts, or in the banking act as to wrongful acts of officers and directors. It has not done so, and the relief if it is extended should be furnished by legislative act, not by judicial legislation.

In **State, ex rel. Lien v. House, 144 Oh St 238,** at page 247 of the opinion it is stated:

"It is the policy of the law, as disclosed by our scheme of statutes of limitation of actions, to require actions which involve the alleged tortious conduct of a defendant to be asserted and prosecuted promptly unless concealment or undiscovered fraud on the part of the defendant is found to exist, for which exceptions are usually made in the general plan for limitation of actions." (Emphasis added.)

No exception has been provided covering mere concealment as distinguished from direct and specific allegations of fact showing fraud.

In **State, ex rel. Papadopoulos v Industrial Comm., 130 Oh St. 70,** at page 80 of the opinion it is stated:

" 'Though a person may not discover his injury until too late to take advantage of the appropriate remedy yet this is said to be one of the occasional hardships necessarily incident to a law arbitrarily making legal remedies contingent on mere lapse of time.' 17 Ruling Case Law, 832, Section 193.

" 'The fact that a person entitled to an action has no knowledge of his right to sue, or of the facts out of which his right arises, does not, as a general rule, prevent the running of the statute, or postpone the commencement of the period of limitation, until he discovers the facts or learns of his rights thereunder.' 17 Ruling Case Law, 831, Section 193.

" 'The operation of the statute of limitations is not suspended or postponed * * * unless such an exception is a rule

of the statute.' 37 Corpus Juris, 986, Section 37. Courts can not engraft exceptions thereon."

Facts alleged showing mere concealment are not sufficient, therefore, to toll the statute.

(17) As a second reason it is contended by plaintiff that:— "The statute does not commence to run as long as directors are in control of the res." This principle has been applied in some jurisdictions outside Ohio. 7 Am. Jur., 236; Michelsen, et al. v. Penney, et al., 135 Fed. (2d) 409, syl. par 4; 83 A. L. R. p. 1206; XXXIX Columbia Law Review, p. 856. It has no support in Ohio, either by statute or judicial decision.

(18) Finding no controlling Ohio authority, no valid reason appears for here resorting to what in effect would be judicial legislation. The Ohio legislature has enacted an extensive law governing the administration of banks. It has provided liability for directors for violation of the provisions of the Act. It has provided for the powers and duties of the Conservator upon assuming control over an insolvent bank. It seems clear that if the legislature had considered it wise or expedient, it could have created responsibility in directors for wrongful acts which would continue during their dominion over the bank and could have, as is done in other states, permitted the Superintendent of Banks in enforcing statutory or tort liability to maintain an action based upon the theory of continuing liability.

In XXXIX Columbia Law Review, supra, at p. 857, it is stated:

"However, some courts hold that the limitation runs only from the time when the wrongdoing directors relinquish their control. Two theories are advanced: one is that control per se amounts to a disability to sue, whether or not all the directors were directly involved; the other is that, although directors are not ordinarily trustees, the fact of control puts the corporation in the position of a cestui of a trust, disabled from making an adverse claim. Assuming that an independent director can effectively protect the corporation, it would seem that more than mere majority control should be required to delay the running of the statute."

Certainly, stockholders on behalf of the bank could have maintained any action now available to the Superintendent of Banks. As has been heretofore stated, mere concealment is

not sufficient in itself to toll the statute. See, Hughes v. Reed, et al., 46 Fed. (2d) 435, 441. In the absence of statute or controlling authority, the doctrine of continuing dominion will be rejected as a basis for tolling the statute of limitations. The same conclusion is well expressed in 25 O. Jur. p. 596. See, also: **Powell, et al. v Koehler, et al., 52 Oh St 103; Townsend v Eichelberger, 51 Oh St 213.**

(19) As a third reason the plaintiff claims that: "The statute does not run for continuing wrongs until the directors leave office." If the facts alleged showed "continuing wrongs" then there is no need to toll the statute for the cause of action would be a continuing cause of action. There was undoubtedly a "continuous fiduciary duty" but the violations of that continuing duty were specific acts of wrongdoing, each of which gave rise to a cause of action in the Bank, if the other necessary elements of a cause of action existed. Manifestly, a series of independent tortious acts may not be so merged as to constitute a continuous tort giving rise to an independent cause of action, cumulative to such separate torts. Such is not the theory of tort liability. It is difficult to distinguish the rationale of this conception from that of continued dominion. That there is a difference may possibly be found, but the factors which control this conception would seem to be little different in effect from those involved in the continued dominion theory.

The only facts which could justify the claim that a continuing wrong is alleged would be those applying to concealment of individual wrongful acts, under allegations of conspiracy, scheme, plan, or policy.

No cause of action is or probably could be stated (short of allegations of absolute fraud) based entirely upon concealment. Nor are we here concerned with a series of associated acts constituting a program of fraud. No support for this theory is found and the statutes are not tolled for "continuing wrongs."

(20) There is another theory for tolling the statute which is included in the last claim of the plaintiff, but seems to be somewhat different in principle from the principal claim and that is the "delayed damage" conception of a tort cause of action.

This theory is set out in **Gillette v Tucker, 67 Oh St. 106** at **page 132** of the opinion. In effect, the theory is that if a wrongful act produces no immediate harmful result amounting to damage, but later if it can be alleged and proved that such wrongful act is the proximate cause of later loss, injury or damage to the plaintiff, his cause of action does not accrue

until such loss, injury, or damage is actually suffered by plaintiff. While there are allegations in some of the causes of action in which the ultimate insolvency of the corporation is charged to be the proximate result of certain specific wrongful acts, the allegation of other facts, coupled with conditions, of which the court may take judicial notice, requires the conclusion that any direct, causal connection between such wrongful acts and the ultimate insolvency of the corporation can only be developed by the use of speculation and conjecture, far extending beyond the realm of reasonable inference.

While the case of **Gillette v Tucker, 67 Oh St 106,** supra, has had a stormy career (see **McArthur v Bowers, 72 Oh St 656,** which was affirmed on the "doctrine of the dissenting opinion") it, in the main, has been followed, but not to the extent of the full scope of the opinion noted. In **Palmer v Humiston, 87 Oh St 401,** at **page 407,** it is apparent that it was the duty of the surgeon to **remove** the sponge and that the continued failure to perform that duty created a continuing **contractual** violation, which could easily furnish a proximate cause for the damage caused by its continued presence in the wounds. The theory of recovery was later clarified in **Bowers v Santee, 99 Oh St 361.** In that case the court held in the syllabus:

"1.  The relation of surgeon and patient is one arising out of contract, express or implied. The surgeon is not an insurer or guarantor, but does agree to exercise the average degree of skill, care and diligence exercised by members of the same profession in the given situation.

"2.  In an action for a breach of the contract in such case, the statute of limitations does not begin to run until the contract relation is terminated. (**Gillette v Tucker, 67 Oh St 106,** approved and followed; **McArthur v Bowers, 72 Oh St 656,** disapproved.)"

At page 366 of the opinion the interesting history of Gillette v. Tucker is reviewed. It may be considered, however, that the syllabus just quoted states the principle of liability finally adopted, which manifestly has no application to the instant considerations at least as heretofore construed.

(21)  The more logical rule, and the one consistent with general policy adverse to stale claims, is stated in United States v. Oregon Lumber Co., 260 U. S., 290, 299.

In Corsicana National Bank v. Johnson, 251 U. S., 68, it is stated in the syllabus:

"The liability imposed upon the director under Rev. Stats., section 5239, is direct, not contingent or collateral; the cause of action and the damages are complete when the money is loaned, and, while the damages may be diminished by what the bank collects from the borrowers, it is not obliged to proceed against them."

With a violation of the National Banking Act, no valid reason appears for applying a different rule where the damage is due to other misconduct of a director.

Delayed damage is ineffective to delay the accrual of a cause of action predicated upon a wrongful act. The damage resulting therefrom is immediate. That its effect may not be apparent is unavailing to delay the operation of the statute of limitations. This consideration has received attention hereinbefore, where it is determined that the law of Ohio does not recognize mere concealment of dereliction, not amounting to actual fraud, sufficient to toll the running of the statute of limitations. Nor can the contention that the directors failing to negative the effects of the original tort thereby created a new cause of action based upon such alleged tort be sustained. If such were the case, each wrongful act would result in a double tort, one for the commission of the tort, one for omission to eliminate the effects of the first. If such were the case, the rule would apply to every tort. The limitation of such rule has just been considered.

(22) As his fourth and final attempt to avoid the operation of the statute of limitations, the plaintiff claims that:—"The statute does not commence to run before insolvency, because it is brought on behalf of **creditors** whose remedy did not accrue prior to that time."

This theory completely ignores the fact that, as heretofore stated, these causes of action are advanced by the Superintendent of Banks under the provisions of the statutes for the benefit of stockholders, depositors, other creditors and the **bank,** and that if the depositors or other creditors had instituted such action in a representative capacity (no personal individual claim being asserted, as distinguished from claims of all other depositors) such action would have been for the benefit of the **bank.** See, 50 A. L. R., 463, (Note) Sec. 1.

The relation of a depositor to the bank is that of debtor and creditor. **5 O. Jur, 382.**

"The contract between the bank and a general depositor is a purely legal one and has nothing of the relation of trust

in it." 5 O. Jur. p. 384; **Squire, Supt. of Banks v Nally, et al., 130 Oh St. 582, 585; Union Properties, Inc. v Baldwin Bros Co., 141 Oh St 303; Busher, etc., v Fulton, Supt, of Banks, 128 Oh St 485.**

So that the representative action of a depositor, like that of any other creditor, is for the benefit of all other depositors, and creditors, and ultimately stockholders, and, hence, for the benefit of the bank, and when the bank is barred by the statute of limitations, the creditors and depositors are barred. The depositors asserting general liability to them have no cause of action, independent of that of the bank.

For these reasons, the ruling of the trial court upon the demurrer based upon the statute of limitations was correct, and its judgment upon the application of the statute of limitations to the causes of action set out in Division I is sustained.

The trial court, as will later herein appear, sustained demurrers to other causes of action based upon the predicate that such causes of action were invalid or ineffective in that facts were not alleged therein stating a cause of action. In so far as the demurrers to such causes of action, also included a demurrer upon the ground of the statute of limitations, the conclusions heretofore stated will apply as a ground for affirming the conclusions of the trial court upon the demurrer, although by it placed upon other grounds.

## II.

The causes of action listed in Division II (Nos. 20, 33, 34, 59 to 97 inclusive) were held insufficient as not containing allegations showing the existence of causes of action. What has been said hereinbefore concerning the presumptions and rules applicable to a petition attacked by demurrer is probably more applicable in the consideration of this phase of the controversy.

It is sufficient to say that such rules and guides are again considered in approaching a decision upon the adverse contentions of the parties as to the demurrers.

The causes of action here considered and the ruling of the trial court upon the several causes of action will be considered in the order mentioned in Division II, as quoted from the plaintiff's brief, supra.

(23) As to the 20th cause of action, the reasoning and conclusion of the trial court is approved. As has hereinbefore

been stated, (in connection with the delayed damage theory) a double tort cannot be created by simply charging failure to eliminate the effects of the wrongful act. The demurrer to the cause of action was properly sustained.

(24) As to the 33rd and 97th causes of action, they are in effect mere recapitulations of alleged torts involved in other causes of action, coupled with charges of conspiracy, or devising a plan, or maintaining a policy, or the perpetration of a scheme, the purpose and object of such conspiracy, plan, policy, or scheme being to do certain unlawful acts previously or later alleged as specific violations of the obligations of the defendant directors.

Would the allegation that a certain act was done in conformity to a conspiracy, plan, policy, or scheme make that act tortious, if such act did not independently of such conspiracy, plan, policy, or scheme constitute a tort? No sound basis appears for such a claim in a civil action under the Code of Civil Procedure. If the torts alleged in the several causes of action caused damage to the bank, they did not cause any greater damage, because they were the outcome of any conspiracy, plan, policy or scheme.

No valid causes of action independent of those otherwise stated are contained in the 33rd and 97th causes of action and the demurrers thereto were properly sustained.

Obviously, also, in so far as the separate causes of action are inoperative by reason of the statute of limitations, in so far as such causes of action are included in these causes of action, Nos. 33 and 97, they would be similarly affected. The same result would apply where such included causes are held subject to attack by reason of insufficiency of allegation.

The ruling and conclusions of the trial court are approved as to the 34th cause of action. It is a composite of causes of action No. 35 and No. 36, just as causes of action No. 33 and No. 97 are composites of previous causes of action.

Although causes of action Nos. 59 to 96, inclusive, are also included in plaintiff's Division II, they are considered in plaintiff's Division III, and will be treated under that heading herein.

### III.

Causes of action 59 to 96, inclusive, mentioned in Division III, supra, were held by the trial court to be premature and a supplemental petition, incorporating the same causes of action, but alleging direct, immediate damage was tendered, after

the opinion of the trial court upon the demurrers was filed, and refused. It would seem that the plaintiff acquiesces in the conclusion of the trial court that these original causes of action are premature, in view of the absence of the allegation of facts, showing proximate damage from the wrongful acts alleged.

In any event, the action of the trial court upon the demurrers to these causes of action is sustained. No immediate losses are alleged therein.

(25) As to the right of the plaintiff to file a supplemental petition, other problems are presented. These have been considered fully by the trial court in its supplemental opinion, filed January 9, 1946, in which the application to file the supplemental petition, and the supplemental petition itself were considered at length.

It is apparent, as stated by the trial court, that "it is impossible, without the infinite labor of detailed comparison and analysis of the basic pleading and its supplement to classify and relate the claims allowed to the appropriate causes of action in the Fourth Amended Petition."

There seems to be no attempt in the supplemental petition to isolate losses paid by the Superintendent of Banks to appropriate causes of action.

No valid ground appears for holding that the trial court abused its discretion in refusing plaintiff the right to file such supplemental petition.

The reasons assigned by the trial court for such refusal appear sound and its refusal is a valid exercise of judicial discretion.

The action of the trial court upon such supplemental petition is approved and affirmed. In addition, what has been said as to the "delayed damage" theory may also be here applicable.

## IV.

As to cause of action No. 50, mentioned in the IVth Division of "Issues," the trial court sustained a demurrer to part of such cause of action and overruled it as to part upon the premise that such "cause of action" contained in fact a number of causes of action, some of which were subject to demurrer and others not.

(26) It is well recognized that a demurrer to a petition which contains more than one cause of action must be overruled if such petition contains a valid cause of action. **31 O. Jur. p. 669.**

Manifestly, a demurrer to a cause of action must be overruled if facts are alleged therein stating a valid cause of ac-

tion, although other facts may be alleged in such cause of action which may be considered as stating a cause of action to which a demurrer would lie.

In sustaining the demurrer to cause of action No. 50 in part, the trial court committed error, prejudicial to the plaintiff. The effect of the action of the trial court was to separately state and number the causes of action alleged in cause of action No. 50, strike out part of them and overrule the demurrer as to the remainder.

## V.

The causes of action included in Division V, supra, are in fact causes of action No. 36 and causes of action Nos. 52 to 58, inclusive.

(27) The trial court overruled the demurrers of all. defendants except that of William G. Mather to these causes of action and sustained the demurrer of Mather thereto, upon the ground of misjoinder of parties defendant.

It appears that the defendant Mather is not involved in causes of action Nos. 52 to 58, inclusive. He, therefore, relies upon §11309 GC, as a basis for affirming the action of the trial court in sustaining his demurrer upon the ground of misjoinder.

On the other hand, the plaintiff relies upon the provisions of §11306, GC, as authority for the joinder of Mather in the Fourth Amended Petition, although he is not charged in causes of action Nos. 52 to 58, inclusive.

This section, Mather claims is modified and limited by §11307, GC, which provides:

"The causes of action so united must not require different places of trial, and, except as otherwise provided, must affect all the parties to the action."

The plaintiff claims that §11307, GC, is inoperative to support the contention of Mather, because §11306 GC, does "otherwise" provide for joinder.

The pertinent parts of §11306, GC, are:

"The plaintiff may unite several causes of action in the same petition, whether they are legal or equitable, or both, when they are included in any of the following classes:

"1. The same transaction;

"2. Transactions connected with the same subject for action;

\* \* \*"

Sec. 11255, GC, provides:

"Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of a question involved therein."

Really two types of joinder are here involved—joinder of causes of action and joinder of defendants in the same petition.

It is apparent the defendant Mather has no concern with the "subject matter for action" in causes of action Nos. 52 to 58 inclusive, but is concerned with other causes of action considered, and if the conclusions of the trial court and those expressed herein are correct, this will still leave cause of action No. 36, in which Mather is still included. The ruling of the trial court upon the Mather demurrer is, therefore, still a question for consideration.

Reference to Volumes 51 and 94 Ohio Laws shows that §11306 and §11307, GC, were consecutive sections in the respective acts. (51 Ohio Laws, p. 70; 94 Ohio Laws, p. 279.)

It is obvious, therefore, that §11307 GC (Section 81 of the Act of 1853, 51 Ohio Laws) a part of the original Code of Civil Procedure, could not refer to the section immediately preceding it. The same situation is present in the Act of 1900 (94 Ohio Laws) involving Section 5058 and Section 5059 of that Act.

The trial court properly sustained the demurrer of Mather and its judgment in that respect is affirmed.

For the reasons given, therefore, the judgment of the Common Pleas Court is reversed as to cause of action No. 50, and otherwise affirmed, except that Causes of Action Nos. 36 and 52-58 are not involved in this appeal, since the ruling of the trial court was not adverse to the appellant. Such Causes of Action Nos. 36 and 52-58 are, therefore, not considered herein, except in connection with the demurrer of Mather.

The Court is advised that the defendants, Edward S. Rogers and Arthur L. Stone, The National City Bank of Cleveland, as Executor of the Estate of Arthur L. Stone, have been dismissed from this action, and the judgment of this Court will be framed accordingly.

HILDEBRANT, PJ, MATTHEWS and ROSS, JJ, concur in syllabus, opinion and judgment.