KAREN NELSON MOORE, Circuit Judge,
dissenting.
This case requires us to make “an Erie guess.” See, e.g., Conlin v. Mortgage Elec. Registration Sys., Inc., 714 F.3d 355, 358-59 (6th Cir.2013). Because the Ohio Supreme Court declined to answer our certified question — and because that court has never opined on whether the theory of adverse domination may be applied to toll Ohio Revised Code § 2305.09’s statute of limitations when a plaintiff alleges a breach of fiduciary duty — “we must predict how the [Ohio Supreme Court] would rule” on this issue “by looking to all available data, including decisions of [Ohio’s] appellate courts.” In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig., 756 F.3d 917, 937 (6th Cir.2014). The majority predicts that the Ohio Supreme Court would not toll § 2305.09’s statute of limitations under an adverse-domination theory. I write separately to emphasize two points. First, the majority’s “Erie guess” is founded on a dearth of relevant case law. Second, the question of whether Ohio law in fact recognizes adverse domination does not admit of an easy answer. For both reasons, I respectfully dissent.
The majority writes that “[t]he Ohio Court of Appeals has twice rejected adverse domination as generally lacking support in Ohio’s statutes' and judicial decisions.” Majority Op. at 582. To be clear: Ohio’s Eighth District Court of Appeals— one of twelve intermediate appellate courts in Ohio — has rejected adverse domination in two opinions written roughly sixty years apart. See Chinese Merchants Ass’n v. Chin, 159 Ohio App.3d 292, 823 N.E.2d 900, 903 (2004); Squire v. Guardian Trust Co., 79 Ohio App. 371, 72 N.E.2d 137, 146-47 (1947). Chin provides: “th[e] doctrine [of adverse domination] has no support in Ohio either by statute or judicial decision.” Chin, 823 N.E.2d at 903. And Chin cites exactly one case in support of its proposition that “Ohio has not adopted the doctrine of adverse domination”: Squire. Id. That means that Squire — a sixty-nine-year-old opinion from one of Ohio’s dozen intermediate appellate courts — is the only Ohio opinion rejecting adverse domination (or, as Squire calls the doctrine, “continuing dominion”) based on its own organic analysis.
True, the Ohio Supreme Court has held that § 2305.09’s “express inclusion of a discovery rule for certain torts .,, including fraud and conversion, implies the exclusion " of other torts arising under the statute, including negligence.” Inv’rs REIT One v. Jacobs, 46 Ohio St.3d 176, 546 N.E.2d 206, 211 (1989). By analogy, one could conclude that the Ohio Supreme Court might decline to toll § 2305.09’s statute of limitations under the closely related doctrine of adverse domination. One could argue that judicial discretion and comity might counsel in favor of this approach. See In re Darvocet, 756 F.3d at 937 (“[F]ederal courts must be cautious when making pronouncements about state law and ‘[w]hen given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path.’ ” (quoting Combs v. Int’l Ins. Co., 354 F.3d 568, 577 (6th Cir.2004))).
*585 The discovery rule, however, is not the only doctrine that shares “theoretical underpinnings” with adverse domination. Majority Op. at 582 (quoting Wilson v. Paine, 288 S.W.3d 284, 287 (Ky.2009)). Indeed, the facts of this case suggest a better analog for our analysis: Ohio law on closely held corporations. See R. 6 (4/28/11 Recommendations for the United States District Court at 90) (Page ID # 355). The Ohio Supreme Court has recognized that “[c]lose corporations” like Antioch “bear a striking resemblance to a partnership.” Crosby v. Beam, 47 Ohio St.3d 105, 548 N.E.2d 217, 220 (1989). In turn, a close corporation’s majority shareholders (like defendants here) owe their minority shareholders “a heightened fiduciary duty” — to wit, “a duty ... of the utmost good faith and loyalty.” Id. (internal quotation marks and citations omitted). “Majority or controlling shareholders breach such fiduciary duty to minority shareholders when control of the close corporation is utilized to prevent the minority from having an equal opportunity in the corporation.” Id. at 221. Those types of breaches are the very ill that adverse domination addresses: it is “an equitable tolling doctrine that suspends the running of limitations while [a] corporation continues under the domination of [] wrongdoers.” F.D.I.C. v. Henderson, 61 F.3d 421, 426 (5th Cir.1995), In this way, adverse domination complements and effectuates the heightened fiduciary protections that Ohio close corporations are supposed to embody. See R. 6 (4/28/11 Recommendations for the United States District Court at 93-94) (Page ID # 358-59). That is a persuasive reason to predict that the Ohio Supreme Court would endorse the adverse-domination theory.
The facts of this case put the practical consequences of the majority’s decision in stark relief. For decades, Antioch thrived. It declined into bankruptcy just a .few years after defendants engineered the ESOP transaction, which enriched the Morgan family at the expense of their employees and the company they had built. In the interim, it seems, defendants took pains to conceal their efforts at self-enrichment and to stymie attempts to resuscitate Antioch. Put simply: there is good reason to believe that Lee Morgan and Asha Morgan Moran adversely dominated Antioch in the years following the ESOP transaction.
The majority’s “Erie guess” insulates both Lee and Asha from liability. I cannot believe that is the result the Ohio Supreme Court would reach. Faced with what appears to be a clear example of corporate wrongdoing, and with virtually no meaningful guidance from Ohio’s highest court, I respectfully dissent.