RENDERED: JUNE 25, 2009
TO BE PUBLISHED

## Supreme Court of Kentucky FINAL

2008-SC-000905-CL

DATE 7/16/09 Kelly Klaber D.C.

JOHN R. WILSON, TRUSTEE FOR
FRANKLIN CAREER SERVICES, LLC

PETITIONER

V.

CERTIFICATION OF LAW
FROM U.S. BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
NO. 06-30010

DAVID B. PAINE AND
JOHN NEWTON

RESPONDENT

**OPINION OF THE COURT BY JUSTICE CUNNINGHAM**

**<u>CERTIFYING THE LAW</u>**

Pursuant to CR 76.37(1), this Court granted the certification request of the United States Bankruptcy Court for the Western District of Kentucky to answer the following question of Kentucky law:

I.  Whether the equitable rule of adverse domination applies to toll the statute of limitations set forth in KRS §§ 271B.8-330(3) and 271B.6-400?

In certifying the question of law to this Court, the United States Bankruptcy Court for the Western District of Kentucky provided a brief explanation of the facts of the case.

On January 4, 2006, Franklin Career Services, Inc., fdba Franklin Career Services, LLC, fdba DDH, INC. ("hereinafter FCS") filed a Chapter 7

petition for relief under Title 11 of the United States Code. On December 21, 2007, Appellant, John R. Wilson, as Trustee in Bankruptcy for FCS and on behalf of the Bankruptcy estate, filed suit against Capital Steel Ventures, Inc., a former parent company of FCS, and former officers and directors of FCS. The Complaint alleged several counts of corporate malfeasance and sought recovery of property as preferences and fraudulent transfers.

In Count Seven of his Complaint, Appellant alleged that unlawful distributions were made to various officers and directors pursuant to KRS § 271B.8-330. Appellant seeks to void those distributions on behalf of the corporation using Trustee's equitable powers provided under the Bankruptcy Code. Appellees, David B. Paine and John Newton, each filed Motions to Dismiss Count Seven on the grounds that the actions were barred by the statute of limitations in KRS § 271B.8-330(3). Appellant responded to this defense by raising the equitable tolling doctrine of "adverse domination."

Because this issue involves a question of Kentucky law that has not been addressed previously by this Court, the United States Bankruptcy Court for the Western District of Kentucky requested certification of the aforementioned question of law pursuant to CR 76.37(1).

KRS § 271B.8-330 provides in pertinent part: "A proceeding under this section shall be barred unless it is commenced within two (2) years after the date on which the effect of the distribution was measured under subsection (5) or (7) of KRS 271B.6-400." It does not appear that Appellant filed his claim

2

against Appellees within the two-year limitations period.

Ordinarily, lack of knowledge of one's rights is insufficient to prevent operation of statutes of limitation. Wilcox v. Sams, 213 Ky. 696, 281 S.W. 832 (1926). However, when the complained of injury is not immediately discoverable, courts steer away from the unfairness inherent in charging a plaintiff with slumbering on rights not reasonably possible to ascertain. The discovery rule, a means by which to identify the "accrual" of a cause of action when an injury is not readily ascertainable or discoverable, was first enunciated in Tomlinson v. Siehl, 459 S.W.2d 166 (Ky. 1970), and later refined in Hackworth v. Hart, 474 S.W.2d 377 (Ky. 1971). "[T]he statute begins to run on the date of the discovery of the injury, or from the date it should, in the exercise of ordinary care and diligence, have been discovered." Id. at 379. This rule entails knowledge that a plaintiff has a basis for a claim before the statute of limitations begins to run. The knowledge necessary to trigger the statute is two-pronged. One must know: (1) he has been wronged; and (2) by whom the wrong has been committed. Drake v. B.F. Goodrich Co., 782 F.2d 638, 641 (6th Cir. 1986). See also Hazel v. General Motors Corp., 863 F.Supp. 435, 438 (W.D.Ky. 1994) ("Under the 'discovery rule,' a cause of action will not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only that he has been injured but also that his injury may have been caused by the defendant's conduct."). As such, the discovery rule works as a "savings" clause or a "second bite at the apple." Queensway

3

Financial Holdings Ltd. v. Cotton & Allen, P.S.C., 237 S.W.3d 141, 148 (Ky. 2007).

The doctrine of adverse domination shares the same theoretical underpinnings as the discovery rule. Michael E. Baughman, Defining the Boundaries of the Adverse Domination Doctrine: Is There Any Repose for Corporate Directors?, 143 U. Pa. L. Rev. 1065, 1093 (1995). It has been described as "merely a corollary of . . . [the] discovery rule, applied in the corporate context." Resolution Trust Corp. v. Farmer, 865 F.Supp. 1143, 1154 n.11 (E.D.Pa. 1994) (citing In re Lloyd Securities, 153 B.R. 677, 685 (E.D.Pa. 1993)).

> It is the 'inherently unknowable' character of the injury that is the critical factor that governs the applicability of the discovery rule . . . . A corporate plaintiff does not have 'knowledge' of an injury to itself until those individuals who control it know of the injury and are *willing to act on that knowledge.* (Emphasis added.)

Id. at 1155. Moreover, "a corporate plaintiff cannot 'discover' injuries to the corporation caused by those who control the corporation." Clark v. Milam, 452 S.E.2d 714, 718 (W.Va. 1994). Therefore, adverse domination provides that the "cause of action will be tolled during the period that a plaintiff corporation is controlled by wrongdoers." Resolution Trust Corp. v. Gardner, 798 F.Supp. 790, 795 (D.D.C. 1992).

The doctrine of adverse domination has not heretofore been considered

by this Court, but has been widely applied by federal courts in cases involving corporate causes of action against directors and officers.[1] See, e.g., Farmers & Merchants Nat. Bank v. Bryan, 902 F.2d 1520 (10th Cir. 1990); IIT, an Intern. Inv. Trust v. Cornfeld, 619 F.2d 909 (2d Cir. 1980); International Railways of Central America v. United Fruit Co., 373 F.2d 408 (2d Cir. 1967), cert. denied, 387 U.S. 921 (1967); Resolution Trust Corp. v. Kerr, 804 F.Supp. 1091 (W.D.Ark. 1992); Resolution Trust Corp. v. Gallagher, 800 F.Supp. 595 (N.D.Ill. 1992); Resolution Trust Corp. v. Gardner, 798 F.Supp. 790 (D.D.C. 1992); Federal Deposit Ins. Corp. v. Howse, 736 F.Supp. 1437 (S.D.Tex. 1990); Federal Deposit Ins. Corp. v. Greenwood, 739 F.Supp. 450 (C.D.Ill. 1989); Federal Deposit Ins. Corp. v. Carlson, 698 F.Supp. 178 (D.Minn. 1988); Federal Sav. and Loan Ins. Corp. v. Burdette, 696 F.Supp. 1196 (E.D.Tenn. 1988); Federal Deposit Ins. Corp. v. Hudson, 673 F.Supp. 1039 (D.Kan. 1987); Federal Sav. and Loan Ins. Corp. v. Williams, 599 F.Supp. 1184 (D.Md. 1984); Federal Deposit Ins. Corp. v. Bird, 516 F.Supp. 647 (D.P.R. 1981); Saylor v. Lindsley, 302 F.Supp. 1174 (S.D.N.Y. 1969).

The doctrine is rooted in the long-established principles of agency law. Adverse domination is premised on the notion that knowledge is not imputed if the agent is acting in a manner adverse to the interests of the principal. This rule is consistent with Kentucky agency law. Owsley County Deposit Bank v. Burns, 196 Ky. 359, 244 S.W. 755 (1922). Thus, "[t]he knowledge of the agent

---

[1] While the majority of cases dealing with adverse domination have come at the federal level, many states have considered the issue as well. For an exhaustive list of states that have considered and applied adverse domination, see Resolution Trust Corp. v. Grant, 901 P.2d 807, 812 at n.16 (Okl. 1995).

is the knowledge of the corporation he serves when the knowledge relates to some matter over which the agent has control and with which his duties are connected and when they relate to matters over which he has authority . . . ." Warfield Natural Gas Co. v. Anderson, 249 Ky. 586, 61 S.W.2d 27, 28 (1933). In the corporate context, the corporation is the principal and the board of directors as a whole is the agent. When the board of directors is accused of breaching its duty to the corporation, it necessarily is accused of acting adversely to the principal's interests. See Resolution Trust Corp. v. Farmer, 865 F. Supp. at 1155-56.

"Because, in most cases, defendants' control of the corporation will make it impossible for the corporate plaintiff independently to acquire the knowledge and resources necessary to bring suit," the adverse domination rule "presumes that actual notice will not be available until the corporate plaintiff is no longer under the control of the erring directors." Hecht v. Resolution Trust Corp., 635 A.2d 394, 405 (Md. 1994). "This prevents the culpable directors from benefiting from their lack of action on behalf of the corporation." Id. at 408.

While courts which have been confronted with the question have almost uniformly embraced adverse domination,[2] there still exists some variation in its

---

[2] A minority of courts that have considered this issue have declined to recognize the doctrine of adverse domination, concluding that the doctrine is inconsistent with applicable state law tolling doctrines and policies of strictly construing statutes of limitations. See, e.g., Resolution Trust Corp. v. Armbruster, 52 F.3d 748, 752 (8th Cir. 1995) (concluding that Arkansas courts do not recognize the doctrine of adverse domination); Resolution Trust Corp. v. Artley, 28 F.3d 1099, 1102 (11th Cir. 1994) (finding the doctrine inapplicable under Georgia law); Federal Deposit Ins. Corp. v. Cocke, 7 F.3d 396, 402-03 (4th Cir. 1993) (declining, under Virginia law, to apply the doctrine to the case at issue, but noting that Virginia recognizes the tolling doctrine of equitable estoppel in cases involving intentional concealment).

application. Notably, courts have differed on the degree of domination of the board required in order for the corporation to claim protection of the doctrine, as well as the degree of culpability that the plaintiff must allege against the directors.

Each shall be discussed in turn.

A majority of jurisdictions follow the "disinterested majority test," whereby a plaintiff is required to show that a majority of the board members were wrongdoers during the period the plaintiff seeks to toll the statute of limitations. See, e.g., Fed. Deposit Ins. Corp. v. Dawson, 4 F.3d 1303, 1310 (5th Cir. 1993); Fed. Deposit Ins. Corp. v. Howse, 736 F.Supp. 1437, 1441 (S.D.Tex. 1990); Fed. Sav. and Loan Ins. Corp. v. Williams, 599 F.Supp. 1184, 1195 (D.Md. 1984); Fed. Deposit Ins. Corp. v. Bird, 516 F.Supp. 647, 651 (D.P.R. 1981). This standard is premised on the notion that "the mere existence of a culpable majority on the board is so likely to preclude the corporation from filing suit against the wrongdoers that tolling is thereby justified." Dawson, 4 F.3d at 1310 (internal citations omitted). Courts have given two rationales to justify this assumption. First, a culpable majority can control the flow of information and thereby prevent disclosure of incriminating information. See Williams, 599 F.Supp. at 1193-94 n.12.; Dawson, 4 F.3d at 1313. Second, it is unreasonable to expect the culpable directors to bring suit against themselves and that as a practical matter, only when a majority of the board no longer consists of wrongdoers can an action be initiated. See, e.g.,

Howse, 736 F.Supp. at 1441. Indeed, though it is in the realm of possibility that a board of directors could bring suit against itself, the likelihood of such is minute. Hecht, 635 A.2d at 407. Thus, "it is only when the culpable directors are replaced by a majority of nonculpable directors and are no longer in control that the claim can be brought." Id. at 402.

Other courts have adopted the more stringent "complete domination" test, which requires the plaintiff to show "full, complete and exclusive control in the directors or officers charged" with the wrongdoing. Farmers & Merchants National Bank v. Bryan, 902 F.2d 1520, 1522 (10th Cir. 1990) (quoting Int'l Rys. of Cent. Am. v. United Fruit Co., 373 F.2d at 414). See also Mosesian v. Peat, Marwick, Mitchell & Co., 727 F.2d 873, 879 (9th Cir. 1984), cert. denied, 469 U.S. 932 (1984); and Resolution Trust Corp. v. Fleischer, 826 F.Supp. 1273, 1276 (D.Kan. 1993). Thus, the plaintiff must negate the possibility that an informed shareholder or director could have induced the corporation to initiate suit. Farmers & Merchants Nat. Bank, 902 F.2d at 1522; Int'l Rys., 373 F.2d at 414.

We believe the wiser approach to be the "disinterested majority" test, as it comports with both common sense and human nature. See Federal Deposit Ins. Corp. v. Smith, 980 P.2d 141, 148 (Or. 1999). The policies enunciated in the "disinterested majority" test also comply with equity and with how limitation defenses generally operate.

> It provides that it is appropriate for the directors to bear the burden of rebutting a presumption of control,

8

because they have greater access to the relevant information – it is the directors, those in control of the corporate records, who will know whether anyone was in a position to bring suit on the corporation's behalf.

Resolution Trust Corp. v. Grant, 901 P.2d 807, 818 (Okl. 1995). To rebut a presumption that accrual of the claims does not take place until a disinterested majority has replaced the culpable directors, the defendants must show that there was someone who had the knowledge, the ability and the motivation to bring suit during the period of corporate control. Hecht, 635 A.2d at 406. Requiring the directors to carry the burden of production is consistent with the general rule that the party raising the statute of limitations bears the burden of presenting evidence to establish the time bar. Slack v. Bryan, 299 Ky. 132, 184 S.W.2d 873, 876 (1945). The plaintiff, however, still has the initial burden to plead and prove facts that the board was composed of a majority of culpable directors. See Southeastern Kentucky Baptist Hosp., Inc. v. Gaylor, 756 S.W.2d 467, 469 (Ky. 1988) ("Once the statute of limitations is raised, the burden falls on the complainant to prove such facts as would toll the statute . . . .")

Furthermore, it is reasonable to assume that a culpable majority would act in its own interest, and, in so doing, would conceal information and prevail on whether to pursue claims.

> While [the culpable majority] retain[s] control they can dominate the non-culpable directors and control the most likely sources of information and funding necessary to pursue the rights of the association. As a

9

> result, it may be extremely difficult, if not impossible, for the corporation to discover and pursue its rights while the wrongdoers retain control.

Williams, 599 F. Supp. at 1193-94 n.12. We, therefore, adopt the "disinterested majority" version of the adverse domination doctrine. The party most likely to be in possession of the information carries the burden to rebut a presumption that accrual of the claim does not occur until a disinterested majority has replaced the controlling culpable directors.

The second area of disagreement among courts concerns the required level of culpability that the plaintiff must allege against the directors. Three theories have emerged. One theory holds that negligent conduct, without more, is sufficient to toll the statute of limitations. See Federal Deposit Ins. Corp v. Carlson, 698 F. Supp. 178, 180 (D.Minn. 1988). More recently, courts have held that negligent conduct is not enough to warrant the application of adverse domination. See Dawson, 4 F.3d at 1313; Resolution Trust Corp. v. Acton, 49 F.3d 1086 (5th Cir. 1995); Farmer, 865 F. Supp. at 1157. These courts, however, have not defined exactly what level of culpability is required. Lastly, at least one court has held that the degree of culpability was irrelevant; because the reason for tolling the statute of limitations is that the plaintiffs cannot discover the cause of action. Clark, 452 S.E.2d at 719.

It is true that the discovery rule arose from medical malpractice claims, and because adverse domination is a corollary of the rule, the logical result

10

would be to follow the Carlson theory whereby negligent conduct would be sufficient. However, as other courts who have dealt with this issue have noted, we fear that a negligent conduct standard would make the doctrine become too widespread. As the Dawson court aptly stated:

> To [allow a negligence standard] would effectively eliminate the statute of limitations in all cases involving a corporation's claims against its own directors . . . . [I]t could almost always be said that when one or two directors actively injure the corporation, or profit at the corporation's expense, the remaining directors are at least negligent for failing to exercise "every precaution or investigation." (Internal citation omitted.) If adverse domination theory is not to overthrow the statute of limitations completely in the corporate context, it must be limited to those cases in which the culpable directors have been active participants in wrongdoing or fraud, rather than simply negligent.

Id., 4 F.3d at 1312.

We believe that the Dawson standard best reflects the fundamental concerns that adverse domination was designed to address. The doctrine is founded on the presumption that those who engage in fraudulent activity likely will make it difficult for others to discover their misconduct. "[T]he danger of fraudulent concealment by a culpable majority of a corporation's board seems small indeed when the culpable directors' behavior consists only of *negligence* . . . ." Id. at 1312-13 (emphasis added). Accordingly, a corporate plaintiff cannot toll the statute of limitations under adverse domination unless it shows that a majority of its directors was more than negligent for the desired tolling

11

period. We hold that intentional wrongdoing of some kind, which would include fraud, is required.

The doctrine of adverse domination recognizes the reality of situations involving wrongdoing by controlling directors and officers of a corporation and the corporation's inability to institute suit to protect it. It is applied to toll statutes of limitations or to delay accrual of causes of action in situations when those in power control the information necessary to institute suit on behalf of an injured corporation. These parties cannot be expected to sue themselves or to initiate an action contrary to their own interests. Today, we hold that the doctrine of adverse domination may operate to toll the statute of limitations under KRS §§ 271B.8-330(3) and 271B.6-400 while directors, who are guilty of alleged misconduct, exercise control over a corporation.

The law is hereby certified to the United States Bankruptcy Court for the Western District of Kentucky.

All sitting. All concur.

COUNSEL FOR APPELLANT:

John Rollin Wilson
Ruck, Wilson, Helline & Brockman, PLLC
6008 Brownsboro Park Blvd., Suite A
Louisville, KY 40207-1295


COUNSEL FOR APPELLEE, DAVID B. PAINE:

John H. Dwyer, Jr.
Pedley, Zielke, Gordinier & Pence, PLLC
2000 Meidinger Tower
462 S. 4th Avenue
Louisville, KY 40202-2555


COUNSEL FOR APPELLEE, JOHN NEWTON:

Jan Charles Morris
125 S. 6th St., Suite 300
Louisville, KY 40202