File Name: 15a0778n.06

No. 14-3790

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| ANTIOCH COMPANY LITIGATION TRUST, W. Timothy Miller, Trustee, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | On Appeal from the United States District Court for the Southern District of Ohio |
| v. | ) ) ) | |
| LEE MORGAN; ASHA MORGAN MORAN; LEE MORGAN GDOT TRUST #1; LEE MORGAN GDOT TRUST #2; LEE MORGAN GDOT TRUST #3; LEE MORGAN POUROVER TRUST #1; LEE MORGAN POUROVER TRUST #2; | ) ) ) ) ) | |
| Defendants-Appellees, and | | |
| CHANDRA ATTIKEN, et al., | | |
| Defendants. | | |
| _____/ | | |

**Before: GUY, MOORE, and KETHLEDGE, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.** The Antioch Company Litigation Trust brought this adversary proceeding against a number of former directors, officers, trustees, and professionals, asserting claims that were transferred to it by the bankruptcy court's order confirming the plan of reorganization of The Antioch Company (and related affiliates). Having settled some claims and abandoned others, plaintiff's appeal challenges several of the district court's orders but only to the extent that those orders granted summary judgment to defendants

Lee Morgan ("Morgan"), Asha Morgan Moran ("Moran"), and five trusts established by Lee Morgan ("Morgan Trusts"). We accordingly limit our discussion to the claims at issue in this appeal.[1]

For the reasons that follow, we affirm the district court's orders granting the defendants' motions for partial summary judgment on the claims for equitable subordination (Count 11) and with respect to the state law claims arising out of the failed efforts to sell the company during 2007 and 2008 (Counts 6, 8, 10, and 13). However, because we grant plaintiff's motion to certify a question of state law to the Supreme Court of Ohio, we reserve decision with respect to the district court's order granting partial summary judgment to defendants on claims for breach of fiduciary duty in connection with the tender offer transaction that closed December 16, 2003 ("ESOP Transaction") (Count 1).

## I.

The Antioch Company began as a bookplate printer, later sold bookstore items and photo albums, and grew into one of the largest direct marketers of scrapbooks and accessories through independent sales consultants. That growth is illustrated by the increase in domestic sales revenue from $1 million in 1991 to approximately $298 million in 2002—driven almost entirely by the direct marketing business operated by its Creative Memories Division. Throughout that period of growth, Antioch was a privately held S-corporation with an established Employee Stock Ownership Plan (ESOP).

Lee Morgan ("Morgan") (son of one of the company's co-founders) was Antioch's long-time President and CEO, and served as Chairman of the Board of Directors. Asha Morgan

---

[1] The Morgan Trusts, which were unsecured creditors in the bankruptcy proceeding, are identified as follows: Lee Morgan GDOT Trust #1, Lee Morgan GDOT Trust #2, Lee Morgan GDOT Trust #3, Lee Morgan Pourover Trust #1, and Lee Morgan Pourover Trust #2. The only claim against the Morgan Trusts is for equitable subordination. Because the parties do not distinguish between the Morgan Trusts, it is assumed that their interests are aligned for purposes of this appeal.

Moran ("Moran") (Morgan's daughter) joined the company in 1999, was a member of the Board of Directors, served as a President of the Creative Memories Division, and later succeeded Morgan as CEO. Morgan and Moran also served on the three-member ESOP Advisory Committee.

## A. 2003 ESOP Transaction

The ESOP held roughly 43% of Antioch's outstanding shares in 2003, while the remaining "non-ESOP" shareholders were primarily members of the Morgan family, trusts controlled by them, and other directors or officers of the company. In fact, the non-ESOP shareholders included six of the company's nine directors and the ESOP Trustee. 2003 would be Antioch's best year, although plaintiff contends that there were signs of slowing growth by mid-2002. Whether or not a downturn was anticipated at that time, there is no dispute that Morgan began looking into estate planning options with an eye to getting out of the company's stock. To that end, Morgan proposed in early 2003 that the company be converted to 100% ESOP ownership.

Ultimately, the Board approved a tender offer transaction that closed on December 16, 2003. That transaction—the fairness of which was not addressed by the district court and remains contested in a related legal malpractice action—resulted in the leveraged buy-out of all of the non-ESOP shareholders and conversion to 100% ESOP ownership (through the ESOP's agreement not to tender its shares). The tender offer was for $850 per share, or a "package" consisting of (i) $280 in cash, (ii) $280 in subordinated notes, and (iii) a warrant valued at $290 for the purchase of one share in the future. Among other terms, Antioch agreed to a guaranteed minimum share price for all ESOP participants who left or retired over the next three years.

The Company financed the ESOP Transaction by taking bank loans, issuing unsecured subordinated notes, and spending down the cash on hand. Plaintiff alleged that Antioch's directors and officers, including Morgan and Moran, breached their fiduciary duties to the corporation by approving an overpriced, highly leveraged transaction that benefitted the non-ESOP shareholders and left the corporation with too little cash and too much debt.[2]

## B.    2007-2008 Sale Process

Antioch's sales began declining in 2004, and continued to decline over the next several years. The deterioration in the business would later be attributed to changes in the market—such as the growth of digital photography, competition from mass retailers, and waning interest in scrapbooking—as well as insufficient capital to meet those challenges. The company's workforce shrank substantially between 2004 and 2006, and the associated stock repurchase obligations required further borrowing and the issuance of additional subordinated notes to former employees.

In early 2007, the Board concluded that the company's financial situation was unsustainable and engaged financial advisors to market the company for sale or recapitalization. Plaintiff alleged that defendants undermined those efforts in several ways, including by involving a second firm in the process to pursue options in the Morgan family's interests. In May 2008, Antioch received the J.H. Whitney Company's Letter of Intent offering to purchase Antioch's assets for $54 million. Whitney had done some due diligence, but its Letter of Intent (LOI) was subject to further due diligence and the negotiation of an asset purchase agreement. When Antioch's financial advisors recommended going forward, Morgan, Moran, and the ESOP

---

[2]Plaintiff contends that the district court erred by refusing to extend or toll the limitations period for this claim on the grounds of adverse domination, equitable tolling, or equitable estoppel. As noted, we reserve our review of that decision until after the Supreme Court of Ohio answers or declines to answer the separately certified question of state law.

Trustee allegedly ousted several board members in order to scuttle the deal and the LOI was allowed to lapse. When no other buyer or lender was found, Antioch's secured lenders forced the company to file a prepackaged Chapter 11 bankruptcy petition on November 13, 2008.

## C.     Court Proceedings

The bankruptcy court confirmed the Second Amended Joint Prepackaged Plan of Reorganization on January 27, 2009, under which lenders provided $31 million in new loans and received preferred stock in the reorganized company. Among other things, the Plan classified the holders of all of the unpaid subordinated notes as "Class 5 Allowed Impaired Unsecured Claims." Those Class 5 Claims, including those belonging to Morgan, Moran, and the Morgan Trusts, received no distributions and were discharged following confirmation.

In addition, the Plan transferred certain litigation claims and rights to The Antioch Company Litigation Trust for it to pursue on behalf of its beneficiaries. The holders of Class 5 Claims were provided an opportunity to become primary beneficiaries of the Litigation Trust by executing a "Class 5 Release Form," which would release any and all claims against various lenders and their agents (not the soon-to-be discharged unsecured claims). Morgan, Moran, and the Morgan Trusts all executed Class 5 Release Forms and became primary beneficiaries of the Litigation Trust (collectively representing 72.4% of the Class 5 primary beneficiaries). It was this beneficial interest that plaintiff argued should be subject to equitable subordination under 11 U.S.C. § 510(c).[3]

The Litigation Trust filed this action in the bankruptcy court on December 23, 2009. The bankruptcy judge issued a report and recommendation addressing the defendants' motions to dismiss the non-core claims, which was adopted by the district court in August 2011. Plaintiff

---

[3]Although not at issue in this appeal, the Plan also created a Creditor/Equityholder Trust that received common shares of the newly reorganized company. The holders of Class 5 Claims also received an interest in that Trust by executing the Class 5 Release Form. (Plan § 5.12(d)).

filed an amended complaint, and discovery proceeded. The district court withdrew the reference to the bankruptcy court, and entered the orders granting defendants' motions for partial summary judgment that are relevant to this appeal. Judgment was entered after the remaining claims were settled, and plaintiff appealed.

## II.

The Amended Complaint alleged breaches of fiduciary duty and tortious interference with contract in connection with the failed sales process during 2007 and 2008, and made a demand for attorney fees incurred in connection with those claims (Counts 6, 8, 10, and 13). The district court (1) granted defendants' motion to exclude the testimony of plaintiff's expert witness, Mark Greenberg, regarding the damages incurred because of defendants' conduct; and (2) entered summary judgment in favor of defendants for failure to present proof of damages sufficient to establish those claims. We affirm.

The decision to exclude testimony from plaintiff's expert witness is reviewed for abuse of discretion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997). The *Daubert* "gate-keeping" function requires that a trial judge determine whether expert testimony is both relevant and reliable. *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).

The district court accepted Greenberg's qualifications as an expert based on his "experience in business valuation, deal structuring, [and] financial and investment analysis," and because he had "successfully led and completed numerous mergers and acquisitions, capital sourcing, recapitalization, and restricting transactions in a wide variety of industries." However, if an expert witness relies "solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the

opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's notes to 2000 amendments. "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Id.* (citing *Daubert v. Merrell Dow Pharms., Inc.*, 43 F. 3d 1311, 1319 (9th Cir. 1995)).

Greenberg's report concluded that "[m]ismanagement of, and interference with, the sale process by the directors and their advisors caused the Company to lose the opportunity to realize between $20 million and $30 million in value[.]" The only support for that opinion in Greenberg's report was his statement that the directors "sat idly by until a bankruptcy filing was the only option and the value of the company had deteriorated to $31-$38 million (as estimated by CRG [Partners] in the bankruptcy), a significant drop in value over the May J.H. Whitney offer." Greenberg conceded, however, that there was no way to know whether Antioch would have realized $54 million if it had pursued Whitney's offer and that he had not reviewed the work underlying CRG's estimated valuation.

The district court did not abuse its discretion in finding that Greenberg's calculation of the value lost as a result of defendants' conduct was without reliable basis. Greenberg did not explain how his experience informed his opinion, or why, in his experience, he thought it likely that Antioch would have sold for at least $54 million after the completion of due diligence if the Board had moved forward on Whitney's offer. Nor did Greenberg explain why he accepted the valuation by CRG that was included in Antioch's bankruptcy disclosures. It is not sufficient to argue that Greenberg was qualified to provide this expertise since he did not.

Plaintiff argued, in the alternative, that it could rely on non-expert witness testimony to prove the same lost value calculation. The district court found, however, that the evidence of both Whitney's Letter of Intent and CRG's valuation were inadmissible hearsay that could not be

considered in deciding a motion for summary judgment. *See Back v. Nestle USA, Inc.*, 694 F.3d 571, 580 (6th Cir. 2012). Plaintiff counters on appeal that Whitney's Letter of Intent could have been admitted either as a statement of "then-existing state of mind (such as motive, intent, or plan)" under Fed. R. Evid. 803(3), or as a business record under Fed. R. Evid. 803(6). However, those arguments were forfeited because they were not made in the district court. *See Greco v. Livingston Cnty.*, 774 F.3d 1061, 1064 (6th Cir. 2014). Absent evidence to establish the top-end value of the calculation, there was insufficient proof of damages sustained as a result of defendants' conduct. The district court did not err in granting summary judgment to defendants on the claims arising from the failed sale process.

### III.

Finally, the district court granted summary judgment to Morgan, Moran, and the Morgan Trusts on the claim for equitable subordination under 11 U.S.C. § 510(c)(1). Equitable subordination does not challenge the existence or validity of a claim or interest, but challenges the priority of an allowed claim or an allowed interest for purposes of distribution. *See In re Insilco Techs., Inc.*, 480 F.3d 212, 218 (3d Cir. 2007); *Bayer Corp. v. MascoTech, Inc. (In re AutoStyle Plastics, Inc.)*, 269 F.3d 726, 744 (6th Cir. 2001).

Here, the Class 5 Claims that arose from the unpaid subordinated notes were deemed "allowed" but were expressly "subject to the Equitable Subordination Rights of the Litigation Trust." (Plan § 1.1124.) However, as with all of the "Class 5 Allowed Impaired Unsecured Claims," Morgan, Moran, and the Morgan Trusts received no distributions and their claims were discharged in the bankruptcy proceeding. The district court found that this made it futile to subordinate defendants' Class 5 Claims to the other Class 5 Claims, and plaintiff does not challenge that conclusion. Instead, plaintiff contends that it was error to conclude that

Case No. 14-3790, *The Antioch Company Litigation Trust v. Lee Morgan, et al.*

defendants' interests as primary beneficiaries of the Litigation Trust were not subject to equitable subordination under § 510(c)(1). Questions of statutory construction are reviewed de novo. *Deutsche Bank Nat. Trust Co. v. Tucker*, 621 F.3d 460, 462 (6th Cir. 2010).

Section 510(c)(1) provides that the court may "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest[.]" 11 U.S.C. § 510(c)(1). An allowed claim or allowed interest is a "claim or interest, proof of which" has been filed in the bankruptcy court under 11 U.S.C. § 501. *See* 11 U.S.C. § 502(a). Creditors of a debtor file a proof of claim, and equity security holders of the debtor file a proof of interest. *See* 11 U.S.C. § 501(a). Defendants' interests in the Litigation Trust, which were received in consideration for executing the Class 5 Releases, were neither "allowed interests" nor "allowed claims" that may be equitably subordinated under § 510(c)(1). Summary judgment was properly entered in favor of defendants.

## IV.

Accordingly, we **AFFIRM** the district court's orders granting partial summary judgment to defendants on the claim for equitable subordination and with respect to the state law claims arising from the failed sale process; but, because we **GRANT** plaintiff's motion to certify a question of law, we **RESERVE** decision with respect to plaintiff's appeal from the order granting partial summary judgment to defendants on Count 1 until after the Supreme Court of Ohio either answers or declines to answer the separately certified question of state law.[4]

---

[4]A separate order of certification is being entered in this case pursuant to the Ohio Supreme Court Practice Rules.

No. 14-3790

**FILED**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DEC 2 2015

**DEBORAH S. HUNT, Clerk**

ANTIOCH COMPANY LITIGATION            )
TRUST, W. Timothy Miller, Trustee,    )
                                       )
        Plaintiff-Appellant,           )         On Appeal from the United States
                                       )         District Court for the Southern
v.                                     )         District of Ohio
                                       )
LEE MORGAN; ASHA MORGAN MORAN;         )
LEE MORGAN GDOT TRUST #1;              )
LEE MORGAN GDOT TRUST #2;              )
LEE MORGAN GDOT TRUST #3;              )
LEE MORGAN POUROVER TRUST #1;          )
LEE MORGAN POUROVER TRUST #2;          )
                                       )
        Defendants-Appellees.          )
                                       )
_____/       )

Before: GUY, MOORE, and KETHLEDGE, Circuit Judges.

## ORDER CERTIFYING QUESTION OF LAW TO THE SUPREME COURT OF OHIO

**PER CURIAM.** This court certifies to the Supreme Court of Ohio "a question of Ohio law that may be determinative of the proceeding and for which there is no controlling precedent in the decisions of [the Ohio] Supreme Court." S.Ct.Prac.R. 9.01(A). We set forth the information required by the Ohio Supreme Court's Rules of Practice and ask that the Supreme Court of Ohio exercise its discretion to answer the following question of law: "Will Ohio law apply the doctrine of adverse domination to toll the statute of limitations provided by Ohio Rev. Code § 2305.09 for a claim of breach of fiduciary duty brought against a director or officer of an Ohio corporation?"

**I.**

## A. Statement of Facts

The Antioch Company Litigation Trust, through its Trustee W. Timothy Miller, brought this adversary proceeding asserting a number of claims that had been transferred to it by the bankruptcy court's order confirming the plan of reorganization of The Antioch Company (Debtor). All but one of plaintiff's claims have been settled, abandoned, or recently resolved in the appeal currently pending before the certifying court. Specifically, the only remaining claim alleged that the directors and officers of Antioch breached their fiduciary duties to the corporation in connection with the approval of the tender offer transaction that closed on December 16, 2003 ("ESOP Transaction") (Count 1). Without reaching the merits, the district court determined that this claim was barred by the applicable four-year statute of limitations and refused to extend or toll the limitations period for this claim on the grounds of adverse domination, equitable tolling, or equitable estoppel. Plaintiff challenged that determination on appeal, and filed a motion to certify the above question regarding adverse domination to the Supreme Court of Ohio. At this juncture, the claim in Count 1 is being pursued only against the defendants Lee Morgan ("Morgan") and his daughter Asha Morgan Moran ("Moran").

### 1. Nature of the Claim

Antioch, which had grown into one of the largest direct marketers of scrapbooks and accessories, was a privately held S-corporation with an established Employee Stock Ownership Plan (ESOP). Morgan—son of one of the company's co-founders—was Antioch's long-time President and CEO and served as Chairman of the Board of Directors. Moran was a member of the Board of Directors, served as President of the company's principal division, and later succeeded Morgan as CEO. Morgan and Moran also served on the three-member ESOP

2

Advisory Committee.

In 2003, the ESOP held roughly 43% of Antioch's outstanding shares, while the remaining "non-ESOP" shareholders were primarily members of the Morgan family, trusts controlled by them, and other directors or officers of the corporation. In fact, the non-ESOP shareholders included six of Antioch's nine members of the Board of Directors. 2003 would be Antioch's best year, although plaintiff argues that there were signs of slowing growth by mid-2002. Whether or not a downturn was anticipated at that time, there is no dispute that Morgan began looking into estate planning options with an eye to getting out of the company's stock. To that end, Morgan proposed in early 2003 that the company be converted to 100% ESOP ownership.

Ultimately, the Board approved a tender offer transaction that closed on December 16, 2003. That transaction—the fairness of which remains contested—resulted in the leveraged buy-out of all of the non-ESOP shareholders and conversion to 100% ESOP ownership (through the ESOP's agreement not to tender its shares). Other provisions included Antioch's agreement to guarantee a minimum share price for all ESOP participants who left or retired during the next three years. Antioch financed the ESOP Transaction by taking loans, issuing subordinated notes, and spending down the cash on hand.

Plaintiff argues that the Board approved the transaction without obtaining an independent evaluation of its prudence or fairness to the corporation, and that the defendants misrepresented the benefits and risks of the transaction in the tender offer proxy materials. Count 1 of the Amended Complaint alleged that the directors and officers, including Morgan and Moran, breached their fiduciary duties to the corporation under Ohio law by approving an overpriced, highly leveraged transaction that benefitted the non-ESOP shareholders and left the corporation

with too little cash and too much debt.

Antioch's sales began declining in 2004, and continued to decline over the next several years. Morgan, Moran, and other conflicted directors continued to serve on the Board of Directors. The deterioration in the company's financial condition finally led the Board to engage a financial advisory firm to market the company for sale or recapitalization during 2007 and 2008. Plaintiff alleged that Morgan and Moran interfered with that process and even ousted several Board members in order to prevent Antioch from going forward with a May 2008 Letter of Intent to purchase the company's assets. When no buyer or lender was found, Antioch was forced to file a prepackaged Chapter 11 bankruptcy petition on November 13, 2008. The bankruptcy court confirmed the Second Amended Joint Prepackaged Plan of Reorganization on January 27, 2009, which, among other things, transferred certain prepetition claims to the Litigation Trust. This action was commenced as an adversary proceeding on December 23, 2009.

## 2. Statute of Limitations

There is no question that claims for breach of fiduciary duty are governed by the four-year statute of limitations found in Ohio Rev. Code § 2305.09(D). It was also undisputed in the district court that the claims alleged in Count 1 accrued at the latest when the ESOP Transaction closed on December 16, 2003, which was more than four years before either the bankruptcy filing or commencement of this adversary proceeding. *Jim Brown Chevrolet, Inc. v. S.R. Snodgrass, A.C.*, 752 N.E.2d 335, 338 (Ohio Ct. App. 2001) (holding that a claim for breach of fiduciary duty accrues when the claimant's interest is impaired); *see also Caghan v. Caghan*, No. 2014CA0094, 2015 WL 2194199, at *6 (Ohio Ct. App. May 11, 2015). Instead, plaintiff argued that the district court should rely on equitable principles to toll the limitations period on the

grounds of adverse domination, equitable tolling, or equitable estoppel. The district court rejected those arguments and concluded, in pertinent part, that the Ohio Supreme Court would not recognize the doctrine of adverse domination as a basis to toll or extend the limitations period for breach of fiduciary duty under Ohio law. *The Antioch Company Litigation Trust v. Morgan, et al.*, No. 3:10-cv-156, 2013 WL 1338834, at *2 (S.D. Ohio Apr. 1, 2013).

## B.    Certification[1]

Certification is generally disfavored when it is sought only after the district court has resolved the issue. *See City of Columbus v. Hotels.com, L.P.*, 693 F.3d 642, 654 (6th Cir. 2012). But, whether to invoke a state court's procedure for certifying a question of state law is a matter within this court's sound discretion, and is "most appropriate when the question is new and state law is unsettled." *Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 390-91 (1974)). We will not trouble the state courts with every arguably unsettled question of state law, as long as well-established principles exist to govern a decision. *See Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009).

When a state's highest court has not spoken on an issue of state law, the federal court is called upon to "predict how the court would rule by looking at all the available data." *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). The doctrine of adverse domination has not been addressed in any decision of the Ohio Supreme Court, but it has been rejected twice by the Ohio Court of Appeals. *See Chinese Merchants Assoc. v. Chin*, 823

---

[1]Plaintiff has also moved for certification of the same question of law in the related legal malpractice action that is still pending in the district court. There, plaintiff alleged, in part, that the law firm failed to advise Antioch to sue its directors and officers before the limitations period expired. That action has been stayed pending resolution of the appeal in this case, including the question of whether Ohio would recognize the doctrine of adverse domination. *See Antioch Litigation Trust v. McDermott, Will & Emery LLP*, No. 3:09-cv-218, Doc. 170, Order Denying Defendant's Motion to Lift Stay (Apr. 17, 2015).

N.E.2d 900, 903 (Ohio Ct. App. 2004); *Squire v. Guardian Trust Co.*, 72 N.E.2d 137, 147 (Ohio Ct. App. 1947). The district court also relied on the Ohio Supreme Court's holding that the "express inclusion of a discovery rule for certain torts arising under [§] 2305.09, including fraud and conversion, implies the exclusion of other torts arising under the statute[.]" *Investors REIT One v. Jacobs*, 546 N.E.2d 206, 211 (Ohio 1989); *see also Flagstar Bank, F.S.B. v. Airline Union's Mtge. Co.*, 947 N.E.2d 672, 676 (Ohio 2011); *Cundall v. U.S. Bank*, 909 N.E.2d 1244, 1249 (Ohio 2009).

Plaintiff contends that, if given the chance, the Supreme Court of Ohio would join the significant number of jurisdictions that have adopted the doctrine of adverse domination. *See, e.g., Wilson v. Paine*, 288 S.W.3d 284, 287-88 (Ky. 2009); *FDIC v. Smith*, 980 P.2d 141, 147 (Or. 1999); *Resolution Trust Corp. v. Scaletty*, 891 P.2d 1110, 1115-16 (Kan. 1995) (answering certified question). However, as a few of our sister circuits have concluded, adverse domination may be inconsistent with a particular state's tolling doctrines and policies regarding the strict construction of its statutes of limitation. *Wilson*, 288 S.W.3d at 288 n.2 (citing cases interpreting Ark., Ga., and Va. law); *see also Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999) (Fla. law).

Although this court stands ready to examine the available data and predict how the Supreme Court of Ohio would rule, the interests of comity and cooperative judicial federalism weigh in favor of providing the Supreme Court of Ohio with an opportunity to decide whether adverse domination may extend or toll the limitations period applicable to a corporate plaintiff's claim for breach of fiduciary duty by its directors or officers. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 77 (1997); *see also Scott v. Bank One Trust Co., N.A.*, 577 N.E.2d 1077, 1081 (Ohio 1991) ("Certification ensures that federal courts will properly apply state law.").

## II.

The following information is provided in accordance with Rule 9.02(A)-(E) of the Supreme Court of Ohio's Rules of Practice.

**A.     Name of the case.** *The Antioch Company Litigation Trust, W. Timothy Miller, Trustee v. Lee Morgan, et al.*, No. 14-3790.

**B.     Facts and question of law.** The facts showing the nature of the claim, the circumstances from which the question of law arises, and other information relevant to the certification of the question of law are set forth above. The certified question of law is: "Will Ohio law apply the doctrine of adverse domination to toll the statute of limitations provided by Ohio Rev. Code § 2305.09 for a claim of breach of fiduciary duty brought against a director or officer of an Ohio corporation?"

**C.     Names of each of the parties remaining in the pending appeal.** Plaintiff-Appellant is The Antioch Company Litigation Trust, through its Trustee W. Timothy Miller.    The Defendants-Appellees are: Lee Morgan; Asha Morgan Moran; and five trusts established by Lee Morgan ("Morgan Trusts") (Lee Morgan GDOT Trust #1; Lee Morgan GDOT Trust #2; Lee Morgan GDOT Trust #3; Lee Morgan Pourover Trust #1; and Lee Morgan Pourover Trust #2). The Morgan Trusts are parties to the pending appeal, but the certified question does not concern any claims against the Morgan Trusts.

**D.     Names, addresses, telephone numbers, and attorney information.**

Counsel for The Antioch Company Litigation Trust:
Marcia Voorhis Andrew
Thomas Robert Schuck
Taft, Stettinius & Hollister
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
(513) 381-2838

7

Case No. 14-3790, *The Antioch Company Litigation Trust v. Lee Morgan, et al.*

Counsel for Morgan, Moran, and the Morgan Trusts:
Michael Lewis Scheier
Danielle M. D'Addesa
Brian P. Muething
Anthony M. Verticchio
Keating, Muething & Klekamp
One E. Fourth Street, Suite 1400
Cincinnati, OH 45202
(513) 639-3855

**E.** **Designation of moving party.** Plaintiff The Antioch Company Litigation Trust, W. Timothy Miller, Trustee, filed the motion for certification of a question of law to the Ohio Supreme Court, and is designated as the moving party.

## III.

Accordingly, the above question of law is **CERTIFIED** to the Supreme Court of Ohio. As required by Rule 9.03(A), Ms. Deborah S. Hunt, Clerk of the United States Court of Appeals for the Sixth Circuit, is instructed to serve copies of this certification order upon counsel of record for the parties and to file this certification order under the seal of this court with the Clerk of the Ohio Supreme Court. Further, as required by Rule 9.03(A), this Order of Certification is signed by Judge Moore, as the Judge presiding over the appeal heard by the panel of Judges Guy, Moore, and Kethledge on October 15, 2015.

FOR THE COURT:

*Karen Nelson Moore*

Karen Nelson Moore, Circuit Judge
United States Court of Appeals for the Sixth Circuit

8

## PROOF OF SERVICE

True copies of the foregoing Certification Order were sent this ____2nd_____ day of ____December_____, 2015, by ordinary United States Mail to Marcia Voorhis Andrew and Thomas Robert Schuck, Taft, Stettinius & Hollister, 425 Walnut Street, Suite 1800, Cincinnati, Ohio 45202, counsel for the plaintiff-appellant; and Michael Lewis Scheier, Danielle M. D'Addesa, Brian P. Muething, Anthony M. Verticchio, Keating, Muething & Klekamp, One E. Fourth Street, Suite 1400, Cincinnati, Ohio 45202, counsel for defendants-appellees.



_____

Deborah S. Hunt, Clerk