NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0170n.06

No. 14-3790

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>ANTIOCH COMPANY LITIGATION<br>TRUST, W. Timothy Miller, Trustee,</td><td>)<br>)<br>)</td><td></td></tr>
<tr><td>    Plaintiff-Appellant,</td><td>)<br>)</td><td>On Appeal from the United States<br>District Court for the Southern<br>District of Ohio</td></tr>
<tr><td>v.</td><td>)<br>)</td><td></td></tr>
<tr><td>LEE MORGAN; ASHA MORGAN MORAN;<br>LEE MORGAN GDOT TRUST #1;<br>LEE MORGAN GDOT TRUST #2;<br>LEE MORGAN GDOT TRUST #3;<br>LEE MORGAN POUROVER TRUST #1;<br>LEE MORGAN POUROVER TRUST #2;</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td></td></tr>
<tr><td>    Defendants-Appellees,<br>and</td><td>)<br>)<br>)</td><td></td></tr>
<tr><td>CHANDRA ATTIKEN, et al.,</td><td>)<br>)<br>)</td><td></td></tr>
<tr><td>    Defendants.</td><td>)</td><td></td></tr>
</table>

FILED
Mar 24, 2016
DEBORAH S. HUNT, Clerk

_____/

**Before: GUY, MOORE, and KETHLEDGE, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.** This court reserved decision with respect to a portion of this appeal and certified a related question of state law to the Supreme Court of Ohio. The Supreme Court of Ohio has declined to answer that question, and we now review the district court's decision granting defendants' motions for partial summary judgment with respect to the claim for breach of fiduciary duty in connection with the tender offer transaction that closed December 16, 2003 ("ESOP transaction") (Count 1). The district court found that the

claim was barred by the statute of limitations provided by Ohio Rev. Code § 2305.09(D), and refused to extend or toll the limitations period on the grounds of adverse domination, equitable tolling, or equitable estoppel. For the reasons that follow, we affirm.

## I.

The Antioch Company Litigation Trust, through its Trustee W. Timothy Miller, brought this adversary proceeding asserting various claims that were transferred to it through the bankruptcy court's order confirming Antioch's plan of reorganization. At this juncture, plaintiff's only unresolved claim is that defendants Lee Morgan ("Morgan") and Asha Morgan Moran ("Moran") breached the fiduciary duties they owed to Antioch, as directors and officers of the corporation, by approving the ESOP Transaction despite their conflicts of interest and when it was not in the best interest of Antioch. Plaintiff maintained that, having failed to obtain an independent evaluation of the prudence or fairness to the corporation, the defendants approved an overpriced, highly leveraged transaction that benefitted themselves as non-ESOP shareholders and left the corporation with too little cash and too much debt. Further, it is alleged that defendants misrepresented the facts concerning the transaction—including, by implying fairness to the corporation and failing to disclose the extent of the risks to the corporation—and concealed the extent of the financial distress experienced by the corporation in the wake of the transaction.

The tender offer transaction resulted in the leveraged buy-out of all of the non-ESOP shareholders and conversion to 100% ESOP ownership (through the ESOP's agreement not to tender its shares). Among the terms was Antioch's agreement to guarantee a minimum share price for all ESOP participants who left or retired over the following three years. Antioch financed the transaction by taking bank loans, issuing unsecured subordinated notes, and

spending down the cash on hand. Over the next several years, Antioch's sales declined, its workforce shrank, and its stock repurchase obligations required further borrowing and the issuance of additional subordinated notes. Throughout that period, Morgan, Moran, and other conflicted directors continued to serve on the Board. Deterioration in the company's financial condition finally led the Board to market the company for sale or recapitalization during 2007 and 2008. But, when no buyer or lender was secured, Antioch was forced to file a prepackaged Chapter 11 bankruptcy petition on November 13, 2008. After the plan of reorganization was confirmed on January 27, 2009, plaintiff commenced this action as an adversary proceeding on December 23, 2009.

## II.

The claim that Morgan and Moran breached their fiduciary duties to Antioch in connection with the ESOP Transaction is governed by the four-year statute of limitations provided by Ohio Rev. Code § 2305.09(D). It was undisputed in the district court that this claim accrued, at the latest, when the ESOP Transaction closed on December 16, 2003, which was more than four years before either the bankruptcy filing or the commencement of this action. *Jim Brown Chevrolet, Inc. v. S.R. Snodgrass, A.C.*, 752 N.E.2d 335, 338 (Ohio Ct. App. 2001) (holding that a claim for breach of fiduciary duty accrues when the claimant's interest is impaired); *see also Caghan v. Caghan*, No. 2014CA0094, 2015 WL 2194199, at *6 (Ohio Ct. App. May 11, 2015).

Disavowing reliance on the statute's limited discovery rule in opposing summary judgment, plaintiff argued instead that the district court should exercise its equitable powers to toll or extend the limitations period under theories of adverse domination, equitable tolling, or equitable estoppel. The district court rejected plaintiff's arguments and granted summary

judgment to defendants. *The Antioch Company Litigation Trust v. Morgan, et al.*, No. 3:10-cv-156, 2013 WL 1338834 (S.D. Ohio Apr. 1, 2013). The district court's determinations of state law are reviewed *de novo*. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991).

## A.     Adverse Domination

Plaintiff argued that Ohio would apply the doctrine of adverse domination to toll or extend the limitations period applicable to Antioch's claims against its directors or officers for breach of fiduciary duty. Because the Supreme Court of Ohio has not addressed the doctrine of adverse domination in any context and declined to answer the question certified to it in this case, the task before us is to "predict how the [state's highest] court would rule by looking to all the available data." *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001).

The Ohio Court of Appeals has twice rejected adverse domination as generally lacking support in Ohio's statutes and judicial decisions. *See Chinese Merchants Assoc. v. Chin*, 823 N.E.2d 900, 903 (Ohio Ct. App. 2004); *Squire v. Guardian Trust Co.*, 72 N.E.2d 137, 146-47 (Ohio Ct. App. 1947). Although neither of those cases involved Ohio Rev. Code § 2305.09(D), both decisions are relevant to our inquiry and should not be disregarded unless we can conclude that the state's highest court would decide otherwise. *Allstate*, 249 F.3d at 454. Plaintiff argued that the Ohio Supreme Court would recognize adverse domination because it takes into account the reality that "defendants' control of the corporation will make it impossible for the corporate plaintiff to independently acquire the knowledge and resources necessary to bring suit." *Hecht v. Resolution Trust Corp.*, 635 A.2d 394, 405 (Md. 1994).

Notably, other courts considering the question of adverse domination have focused on whether state law would apply a discovery rule to the relevant claim for purposes of the statute

of limitations. *See, e.g.*, *Wilson v. Paine*, 288 S.W.3d 284, 287-88 (Ky. 2009); *FDIC v. Smith*, 980 P.2d 141, 147 (Or. 1999); *Resolution Trust Corp. v. Scaletty*, 891 P.2d 1110, 1115-16 (Kan. 1995). As one court explained, "adverse domination shares the same theoretical underpinnings as the discovery rule." *Wilson*, 288 S.W.3d at 287; *see also Cedar Rapids Lodge & Suites, LLC v. JFS Dev., Inc.*, 789 F.3d 821, 824-25 (8th Cir. 2015). But, as several of our sister circuits have also concluded, adverse domination may be inconsistent with a particular state's tolling doctrines and policies regarding the strict construction of its statutes of limitation. *See Wilson*, 288 S.W.3d at 288 n.2 (citing cases interpreting Ark., Ga., and Va. law); *Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999) (interpreting Fla. law).

Here, the starting point must be § 2305.09's limited discovery rule, which provides that: "If the action is for trespassing under ground or injury to mines, or for the wrongful taking of personal property, the causes thereof shall not accrue until the wrongdoer is discovered; nor, if it is for fraud, until the fraud is discovered." Thus, claims "for fraud and breach of fiduciary duty based on fraud" are governed by § 2305.09(D)'s four-year statute of limitations "unless the claim is not discovered despite reasonable diligence." *Cundall v. U.S. Bank*, 909 N.E.2d 1244, 1249 (Ohio 2009). However, the Ohio Supreme Court has declined to expand application of the discovery rule, reasoning that the legislature's "express inclusion of a discovery rule for certain torts arising under [§] 2305.09, including fraud and conversion, implies the exclusion of other torts arising under the statute[.]" *Investors REIT One v. Jacobs*, 546 N.E.2d 206, 211 (Ohio 1989); *see also Flagstar Bank, F.S.B. v. Airline Union's Mtge. Co.*, 947 N.E.2d 672, 676 (Ohio 2011). Consistent with this reasoning, the Ohio Court of Appeals has found that the discovery rule does not toll the statute of limitations for claims for breach of fiduciary duty under Ohio law. *See Caghan*, 2015 WL 2194199, at *6 (citing cases).

Accordingly, the district court did not err in concluding that the Ohio Supreme Court would not recognize adverse domination as a basis to toll or extend the statute of limitations applicable to a corporation's claim for breach of fiduciary duty by its directors or officers under § 2305.09(D).

**B.      Equitable Tolling or Equitable Estoppel**

Plaintiff also argued that the limitations period should be tolled under principles of equitable tolling or equitable estoppel.   Under Ohio law, equitable tolling is to be applied sparingly where a litigant has "diligently pursued his rights, but some extraordinary circumstance stood in his way and prevented timely action."   *Coleman v. Columbus State Comm. Coll.*, __N.E.3d__, 2015 WL 7081159 at \*5 (Ohio Ct. App. 2015) (quoting *In re Regency Village Certificate of Need Application*, No. 11AP-41, 2011 WL 4541358, at \*9 (Ohio Ct. App. Sept. 30, 2011)).   Despite plaintiff's attempt to distinguish this theory from adverse domination, the asserted basis for equitable tolling was that the defendants so controlled and dominated the Board of Directors that no one was in a position to bring this claim before the limitations period expired.   We agree with the district court that there is not support in Ohio law for the application of equitable tolling to these circumstances.   Nor did the district court err by refusing to exercise its inherent equitable power to toll the limitations period in the absence of authority to do so under Ohio law.   *See Guaranty Trust Co. v. York*, 326 U.S. 99, 105 (1945) (explaining that the federal courts do not have "the power to deny substantive rights created by state law or to create substantive rights denied by State law").

Lastly, a claim for equitable estoppel requires proof "(1) that the defendant made a factual misrepresentation; (2) that it is misleading; (3) induces actual reliance which is reasonable and in good faith; and (4) which causes detriment to the relying party."   *Doe v. Blue*

*Cross/Blue Shield of Ohio*, 607 N.E.2d 492, 498 (Ohio Ct. App. 1992).  The purpose of equitable estoppel is "to prevent actual or constructive fraud and to promote the ends of justice."  *Doe v. Archdiocese of Cincinnati*, 880 N.E.2d 892, 895 (Ohio 2008).  However, in the context of a statute-of-limitations defense, a plaintiff must show reasonable reliance on a misrepresentation that "was calculated to induce a plaintiff to forgo the right to sue."  *Hoeppner v. Jess Howard Elec. Co.*, 780 N.E.2d 290, 297 (Ohio Ct. App. 2002) (citation omitted).

Plaintiff's claim for equitable estoppel in this case rested on allegations that defendants misrepresented the benefits and risks of the transaction and concealed the extent of the financial distress that followed the transaction.  Although these misrepresentations related to the merits of plaintiff's claims, they do not involve "'an affirmative statement that the statutory period to bring an action was larger than it actually was' or 'promises to make a better settlement of the claim if plaintiff did not bring the threatened suit,' or 'similar representations or conduct' on defendant's part."  *Helman v. EPL Prolong, Inc.*, 743 N.E.2d 484, 495 (Ohio Ct. App. 2000) (quoting *Cerney v. Norfolk & W. Ry. Co.*, 662 N.E.2d 827, 831 (Ohio Ct. App. 1995)).  As such, plaintiff failed to make the required showing to toll the limitations period on the grounds of equitable estoppel.

Accordingly, the district court's order granting partial summary judgment to defendants with respect to the claim for breach of fiduciary duty in connection with the tender offer transaction is **AFFIRMED**.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** This case requires us to make "an *Erie* guess." *See, e.g.*, *Conlin v. Mortgage Elec. Registration Sys., Inc.*, 714 F.3d 355, 358-59 (6th Cir. 2013). Because the Ohio Supreme Court declined to answer our certified question—and because that court has never opined on whether the theory of adverse domination may be applied to toll Ohio Revised Code § 2305.09's statute of limitations when a plaintiff alleges a breach of fiduciary duty—"we must predict how the [Ohio Supreme Court] would rule" on this issue "by looking to all available data, including decisions of [Ohio's] appellate courts." *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 937 (6th Cir. 2014). The majority predicts that the Ohio Supreme Court would *not* toll § 2305.09's statute of limitations under an adverse-domination theory. I write separately to emphasize two points. First, the majority's "*Erie* guess" is founded on a dearth of relevant case law. Second, the question of whether Ohio law in fact recognizes adverse domination does not admit of an easy answer. For both reasons, I respectfully dissent.

The majority writes that "[t]he Ohio Court of Appeals has twice rejected adverse domination as generally lacking support in Ohio's statutes and judicial decisions." Majority Op. at 4. To be clear: Ohio's Eighth District Court of Appeals—one of *twelve* intermediate appellate courts in Ohio—has rejected adverse domination in two opinions written roughly sixty years apart. *See Chinese Merchants Ass'n v. Chin*, 823 N.E.2d 900, 903 (Ohio Ct. App. 2004); *Squire v. Guardian Trust Co.*, 72 N.E.2d 137, 146-47 (Ohio Ct. App. 1947). *Chin* provides: "th[e] doctrine [of adverse domination] has no support in Ohio either by statute or judicial decision." *Chin*, 823 N.E.2d at 903. And *Chin* cites exactly one case in support of its proposition that "Ohio has not adopted the doctrine of adverse domination": *Squire*. *Id.* That means that *Squire*—a sixty-nine-year-old opinion from one of Ohio's dozen intermediate appellate courts—

is the only Ohio opinion rejecting adverse domination (or, as *Squire* calls the doctrine, "continuing dominion") based on its own organic analysis.

True, the Ohio Supreme Court has held that § 2305.09's "express inclusion of a discovery rule for certain torts . . . , including fraud and conversion, implies the exclusion of other torts arising under the statute, including negligence." *Inv'rs REIT One v. Jacobs*, 546 N.E.2d 206, 211 (Ohio 1989). By analogy, one could conclude that the Ohio Supreme Court might decline to toll § 2305.09's statute of limitations under the closely related doctrine of adverse domination. One could argue that judicial discretion and comity might counsel in favor of this approach. *See In re Darvocet*, 756 F.3d at 937 ("[F]ederal courts must be cautious when making pronouncements about state law and '[w]hen given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path.'" (quoting *Combs v. Int'l Ins. Co.,* 354 F.3d 568, 577 (6th Cir. 2004))).

The discovery rule, however, is not the only doctrine that shares "theoretical underpinnings" with adverse domination. Majority Op. at 5 (quoting *Wilson v. Paine*, 288 S.W.3d 284, 287 (Ky. 2009)). Indeed, the facts of this case suggest a better analog for our analysis: Ohio law on closely held corporations. *See* R. 6 (4/28/11 Recommendations for the United States District Court at 90) (Page ID #355). The Ohio Supreme Court has recognized that "[c]lose corporations" like Antioch "bear a striking resemblance to a partnership." *Crosby v. Beam*, 548 N.E.2d 217, 220 (Ohio 1989). In turn, a close corporation's majority shareholders (like defendants here) owe their minority shareholders "a heightened fiduciary duty"—to wit, "a duty . . . of the utmost good faith and loyalty." *Id.* (internal quotation marks and citations omitted). "Majority or controlling shareholders breach such fiduciary duty to minority

shareholders when control of the close corporation is utilized to prevent the minority from having an equal opportunity in the corporation." *Id.* at 221. Those types of breaches are the very ill that adverse domination addresses: it is "an equitable tolling doctrine that suspends the running of limitations while [a] corporation continues under the domination of [] wrongdoers." *F.D.I.C. v. Henderson*, 61 F.3d 421, 426 (5th Cir. 1995). In this way, adverse domination complements and effectuates the heightened fiduciary protections that Ohio close corporations are supposed to embody. *See* R. 6 (4/28/11 Recommendations for the United States District Court at 93–94) (Page ID #358–59). That is a persuasive reason to predict that the Ohio Supreme Court would endorse the adverse-domination theory.

The facts of this case put the practical consequences of the majority's decision in stark relief. For decades, Antioch thrived. It declined into bankruptcy just a few years after defendants engineered the ESOP transaction, which enriched the Morgan family at the expense of their employees and the company they had built. In the interim, it seems, defendants took pains to conceal their efforts at self-enrichment and to stymie attempts to resuscitate Antioch. Put simply: there is good reason to believe that Lee Morgan and Asha Morgan Moran adversely dominated Antioch in the years following the ESOP transaction.

The majority's "*Erie* guess" insulates both Lee and Asha from liability. I cannot believe that is the result the Ohio Supreme Court would reach. Faced with what appears to be a clear example of corporate wrongdoing, and with virtually no meaningful guidance from Ohio's highest court, I respectfully dissent.